IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RYAN NICHOLL, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> SAMUEL S. OLENS, in his official : <br> capacity only, : <br> : <br> Defendant, : <br> : <br> The Grade (in rem) : <br> Defendant. : | CA No. 1:17cv4518-AT |

**DEFENDANT'S BRIEF IN SUPPORT OF
MOTION TO DISMISS**

**INTRODUCTION**

This is an action brought by a university student that concedes he failed to complete an assignment but contends that the assignment violated his First Amendment rights and that his subsequent grade violated his Due Process rights. Plaintiff's claims are frivolous and should be dismissed.

1

# ARGUMENT

## I. This Court Lacks Subject Matter Jurisdiction as Plaintiff's Claims are Barred by the Eleventh Amendment.

A complaint is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1) where the district court lacks subject matter jurisdiction. Here, Plaintiff's claims, against Samuel S. Olens in his official capacity as President of Kennesaw State University, are barred by the Eleventh Amendment.

The Eleventh Amendment bars actions against a State when the State is the real party in interest. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985). This immunity extends to state officers sued in their official capacities. *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). "[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents . . . ." *Kentucky*, 473 U.S. at 169 (quoting *Brandon v. Holt*, 469 U.S. 464, 471 (1985)).[1]

An exception to this immunity, pursuant to *Ex parte Young*, 209 U.S. 123 (1908), is limited to suits against state officers for "*prospective* equitable relief to end continuing violations of federal law." *Florida Ass'n of Rehab. Facilities, Inc.*

---

[1] Samuel S. Olens is the President of Kennesaw State University. Doc. 1 ¶ 10. Kennesaw State University is governed by the Board of Regents of the University System of Georgia, a state agency. Doc. 1 ¶¶ 2, 4. *See also Bd. of Regents of the Univ. Sys. Of Ga. v. Brooks*, 324 Ga. App. 15, 17 (2013) ("[T]he Board of Regents is the state agency vested with the governance, control, and management of the University System of Georgia.").

*v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000) (emphasis added). "In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct." *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999). Here, Plaintiff filed this suit seeking relief for an alleged *past* violation of constitutional rights. In other words, Plaintiff is seeking retrospective relief which is barred by the Eleventh Amendment. "Retrospective relief is backward-looking, and seeks to remedy harm 'resulting from a past breach of a legal duty on the part of the defendant state officials.'" *Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1249 (11th Cir. 2014) (quoting *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)) (emphasis in original). "Simply because the remedy will occur in the future, does not transform it into 'prospective' relief. The term, 'prospective relief,' refers to the ongoing or future threat of harm, not relief." *Fedorov v. Bd. of Regents*, 194 F. Supp. 2d 1378, 1387 (S.D. Ga. 2002). Because Plaintiff's claims are barred by the Eleventh Amendment, this Court lacks subject matter jurisdiction and the complaint should therefore be dismissed.

     Moreover, Plaintiff's constitutional claims are necessarily brought pursuant to 42 U.S.C. § 1983. Section 1983 provides a cause of action for violations of federal constitutional or statutory rights by any "person" acting under color of law.

The Supreme Court has ruled that the term "person" in this context is to be given its ordinary meaning; "a State is not a 'person' within the meaning of § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65 (1989).  Furthermore, the Supreme Court has explained that the definition of a "State" includes State agencies and individual state officers sued in their official capacity.  *Will*, 491 U.S. at 70, 71; *Mt. Healthy Bd. Of Educ. v. Doyle*, 429 U.S. 276, 280 (1977).  *See also*, *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997) (rejecting an award of nominal damages, pursuant to § 1983, against a state officer sued in his official capacity and explaining that a waiver of sovereign immunity was not relevant because "§1983 actions do not lie against a State.")  Defendant, in his official capacity, is not a "person" pursuant to 42 U.S.C. §1983 and therefore to the extent Plaintiff seeks relief beyond that permitted under *Ex Parte Young,* those claims must be dismissed.

**II.     This Court Lacks In Rem Jurisdiction.**

Actions *in rem* are actions against property.  *Shaffer v. Heitner*, 433 U.S. 186, 199 (1977).  The court's jurisdiction is derived "entirely from the court's control over the defendant *res*."  *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1435 (11th Cir. 1991) (citing *Pennington v. Fourth Nat'l Bank*, 243 U.S. 269, 272 (1917); *United States v. One Lear Jet Aircraft*, 836 F.2d 1571,

1573 (11th Cir.) (*en banc*), *cert. denied*, 487 U.S. 1204 (1988)). Here, there is no property at issue. "A judgment *in rem* affects the interests of all persons in designated property." *Shaffer*, 433 U.S. at 199. Ownership of Plaintiff's grade is not at issue. Therefore, this Court lacks any *in rem* jurisdiction.

### III.   Even If Plaintiff's Claims Were Not Barred By the Eleventh Amendment, Plaintiff's Complaint Fails to State a Claim for Relief.

#### A.   The Motion to Dismiss Standard.

When reviewing a motion to dismiss, the Court must take the allegations of the complaint as true, and must construe those allegations in the light most favorable to the plaintiff. *Riven v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Amer. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (courts are to "eliminate any allegations in the complaint that are merely legal conclusions").

Additionally, "unwarranted deductions of fact in a complaint are not admitted as true for purposes of testing the sufficiency of plaintiff's allegations." *Sinaltrainal v. The Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (internal quotations omitted). A court is to make reasonable inferences in the plaintiff's

5

favor, but it is not required to draw plaintiff's inferences. *Id.; see also Amer. Dental Assoc.*, 605 F.3d at 1290 ("courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer"), *quoting Iqbal*, 556 U.S. at 682. "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal*, 578 F.3d at 1260. Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" 556 U.S. at 679.

**B.    Plaintiff's Complaint Fails to State a Claim For a First Amendment Violation.**

Plaintiff received a B grade in his Technical Writing course because he refused to complete an assignment. Doc. 1 ¶¶ 6-8. Plaintiff asserts that the assignment "required the student to disclose political viewpoints" [Doc. 1 ¶ 9], which Plaintiff believes is prohibited by the First Amendment.[2] Students do not have a First Amendment right to refuse curricular assignments. As the Supreme

---

[2] The assignment consisted of five questions soliciting feedback about the class. *See* Doc. 1 ¶¶ 14-18.

Court has explained, a school's curriculum is school sponsored speech and "reasonably related to legitimate pedagogical concerns." *Hazelwood Sch. Dist. v. Kuhlmeir*, 484 U.S. 260, 273 (1988).  Therefore, educators have broader authority to restrict school sponsored student speech, i.e., speech that is "supervised by faculty members and designed to impart particular knowledge or skills to student participants and audiences." *Hazelwood*, 484 U.S. at 271.

The Eleventh Circuit has likewise held that "[i]n matters pertaining to [ ] curriculum, educators have been accorded greater control over expression than they may enjoy in other spheres of activity." *Virgil v. School Bd.*, 862 F.2d 1517, 1520 (11th Cir. 1989) (citing, *Hazelwood*, 484 U.S. at 267-271).

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment. [footnote omitted]

*Regents of University of Michigan v. Ewing*, 474 U.S. 214, 225 (1985).  The Supreme Court has repeatedly held that matters of educational policy should be left to educators.  "Cognizant that judges lack the on-the-ground expertise and experience of school administrators, [ ], we have cautioned courts in various contexts to resist 'substitut[ing] their own notions of sound educational policy for

those of the school authorities which they review.'" *Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez*, 561 U.S. 661, 686 (2010) (quoting *Board of Ed. of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 206 (1982)). Educators – not students – are the ones authorized "to choose among pedagogical approaches." *Martinez*, 561 at 686. The Eleventh Circuit has repeatedly affirmed this principle, explaining that "[f]ederal judges should not be ersatz deans or educators." *Bishop v. Aronov*, 926 F.2d 1066, 1075 (11th Cir. 1991). *Accord Keeton v. Anderson-Wiley*, 664 F.3d 865, 875-876 (11th Cir. 2011) (holding that university professors could impose a remediation plan on a counseling student despite that students' religious objections to the curriculum).

> University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation. *Board of Curators, Univ. of Mo. v. Horowitz*, 435 U.S. 78, 96, n. 6 (1978) (POWELL, J., concurring). *See id.*, at 90-92 (opinion of the Court). Considerations of profound importance counsel restrained judicial review of the substance of academic decisions.

*Ewing*, 474 U.S. 214, 226 (1985).

Courts in other circuits have similarly described the broad discretion afforded educators in matters of curriculum and grades as follows:

> [T]eachers, like judges, must daily decide which arguments are relevant, which computations are correct, which analogies are good or

8

> bad, and when it is time to stop writing or talking. Grades must be given by teachers in the classroom, just as cases are decided in the courtroom; and to this end teachers, like judges, must direct the content of speech. Teachers may frequently make mistakes in grading and otherwise, just as we do sometimes in deciding cases, but it is the essence of the teacher's responsibility in the classroom to draw lines and make distinctions -- in a word to encourage speech germane to the topic at hand and discourage speech unlikely to shed light on the subject. Teachers therefore must be given broad discretion to give grades and conduct class discussion based on the content of speech.

*Settle v. Dickson County Sch. Bd.*, 53 F.3d 152, 155-156 (6th Cir. 1995), *cert. denied*, 516 U.S. 989 (1995).  *See also Pompeo v. Bd. of Regents*, 852 F.3d 973, 980-981 (10th Cir. 2017) (finding no First Amendment violation where college student failed to submit assignment because she was unwilling to omit specific words from her paper, as directed by her instructor.)

Here, Plaintiff's instructor had the discretion to establish the assignments for the class and to determine each assignment's weight in the final grade.  Plaintiff's First Amendment claim should be dismissed.

### C. Plaintiff's Complaint Fails to State a Due Process Claim.

The Fourteenth Amendment's due process clause provides two types of protection:  (1) substantive due process; and (2) procedural due process.  *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc).  The substantive component of the clause protects those rights that are "fundamental," that is, rights

that are "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325 (1937). Areas in which rights are created only by the state law are *not* subject to substantive due process protection. *McKinney*, 20 F.3d at 1556. Here, Plaintiff does not appear to assert a substantive due process claim since he has not identified a right deemed by the Supreme Court to merit substantive due process protection.

Procedural due process is a guarantee of fair procedures whereby the state may not deprive a person of life, liberty or property without providing "appropriate procedural safeguards." *Daniels v. Williams*, 474 U.S. 327 (1986). "The fundamental requirement of [procedural] due process is the opportunity to be heard." *Parratt v. Taylor*, 451 U.S. 527, 540 (1981). "A §1983 action alleging a procedural due process clause violation requires proof of three elements: a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process." *Doe v. Fla. Bar*, 630 F.3d 1336, 1342 (11th Cir. 2011) (quoting *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)). Here, Plaintiff has not even identified a constitutionally-protected liberty or property interest. Plaintiff's asserted Due Process claim appears to be premised on the theory that while he was given an opportunity to appeal his grade, he could not appeal "the legality of his assignment." Doc. 1 ¶ 5. However, as stated above,

before Plaintiff can assert a procedural due process claim, he must first identify an interest protected by state law.  In other words, if Plaintiff does not have a state created *right* under Georgia law to be free from the subject assignment, then there can be no procedural due process right to challenge the assignment.

Georgia law does not recognize a constitutionally protected right to a certain grade, assignment, or academic outcome.  In *Woodruff v. Georgia State University*, 251 Ga. 232, 234 (1983), the Georgia Supreme Court ruled that academic disputes, like the one at issue in this case, do not present justiciable controversies.  After discussing numerous cases affirming the need for judicial restraint in various areas related to academic decisionmaking, the Court specifically applied that line of cases to a lawsuit challenging a college's grading and evaluation of a student's work: "We now decline to review a teacher's academic assessment of a student's work." *Woodruff*, 251 Ga. at 234.

In *Board of Regents of the University System of Georgia v. Houston*, 282 Ga. App. 412 (2006), the Georgia Court of Appeals cited approvingly to *Woodruff* in ruling that a trial court had erred in exercising jurisdiction over a lawsuit challenging a college suspension:  "It is well settled that disputes concerning academic decisions made by public institutions of learning present no justiciable controversy." *Houston*, 282 Ga. App. at 414.   "'[J]udicial restraint stems from

confidence that school authorities are able to discharge their academic duties in fairness and with competence'" and a need to "'shiel[d] the courts from an incalculable new potential for lawsuits, testing every Latin grade and every selection for the Safety Patrol.'" *Id.* (citing *Woodruff*, 251 Ga. at 234). Thus, because Plaintiff's allegations do not give rise to the deprivation of a recognized state right under Georgia law, there can be no procedural due process claim.

 Moreover, even if Plaintiff could articulate a constitutionally protected liberty or property interest, Plaintiff cannot satisfy the third step, i.e., constitutionally inadequate process. The Eleventh Circuit has repeatedly explained that procedural due process violations are not complete unless and until the state refuses to provide due process. *McKinney*, 20 F.3d at 1562. The state can cure a procedural deprivation by providing a later procedural remedy. *McKinney*, 20 F.3d at 1557. Only when the state refuses to provide a process sufficient to remedy the deprivation does a constitutional violation become actionable under § 1983. *Id. See also Wells v. Columbus Tech. College*, 510 Fed. Appx. 893, 897 (11th Cir. 2013) (explaining that "[p]rocedural due process violations do not even exist unless no adequate state remedies are available.") (quoting *Cotton v. Jackson*, 216 F.3d 1328, 1331 n.2 (11th Cir. 2000)).

Here, there existed a state administrative process available to Plaintiff, which was KSU's grade appeal process, and Plaintiff's Complaint acknowledges that he availed himself of that process through his multiple appeals from the Department Chair to the Dean, the Provost, and finally the President.  Doc. 1 at ¶¶ 20-21.  The availability of the state remedy means that the procedural due process claim asserted does not exist.  *See Horton v. Bd. of County Comm'rs*, 202 F.3d 1297, 1300 (11th Cir. 2000) ("If state court could [provide an adequate remedy], then there is no federal due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so"). Accordingly, Plaintiff fails to state a procedural due process claim.

### D. Plaintiff's Complaint Fails to State a Claim for a Thirteenth Amendment Violation.

Plaintiff asserts that the class assignment amounted to "a coerced survey" in violation of the Thirteenth Amendment.  Doc. 1 p. 12 ¶ 5.

Courts generally interpret the term "involuntary servitude" narrowly. *Leveto v. Lapina*, 2000 U.S. Dist. LEXIS 1972, at * 53 (W.D. Pa. Feb. 5, 2000) (citing *Brooks v. George Cnty., Miss.*, 84 F.3d 157 (5th Cir. 1996)). Involuntary servitude under the Thirteenth Amendment "has been defined as an action by a wrongdoer causing the victim to have, or to believe he has, no way to avoid continued service

or confinement." *Id.* (citing *Steirer v. Bethlehem Area Sch. Dist.*, 987 F.2d 989, 999 (3d Cir. 1993)).  The Supreme Court has explained that "in every case in which [the] Court has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction." *United States v. Kozminski*, 487 U.S. 931, 943 (1988).  Defendant could find no case that came close to finding a Thirteenth Amendment violation for a compelled class assignment.  In fact, the cases suggest the opposite.

In *Steirer*, the court examined the claim that a mandatory community service program in a public high school constituted involuntary servitude under the Thirteenth Amendment. 987 F.2d 989.  Following "the Supreme Court and other courts of appeals in taking a contextual approach to involuntary servitude…," the court found no violation of the Thirteenth Amendment by "confining [claims] to those situations that are truly 'akin to African slavery.'" *Id*. at 1000.  Significantly, in making its determination, the *Steirer* court noted that courts have consistently rejected claims that "'forced labor' amounted to involuntary servitude." *Id*.  Plaintiff's claim of a Thirteenth Amendment violation is frivolous, and should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant prays that his Motion to Dismiss be granted and Plaintiff's Complaint be dismissed.

        Respectfully submitted,

        CHRISTOPHER M. CARR
        Attorney General        112505

        ANNETTE M. COWART        191199
        Deputy Attorney General

        RUSSELL D. WILLARD        760280
        Senior Assistant Attorney General

        /s/Cristina M. Correia
        CRISTINA M. CORREIA        188620
        Assistant Attorney General

        REBECCA S. MICK        504300
        ELIZABETH A. MONYAK        005745
        Senior Assistants Attorney General

        Georgia Department of Law
        40 Capitol Square SW
        Atlanta, GA  30334
        404-656-7063

        Attorneys for Defendant

Please address all
Communication to:
ELIZABETH A. MONYAK
Senior Assistant Attorney General
40 Capitol Square SW
Atlanta, GA  30334
emonyak@law.ga.gov

404-463-3630
404-657-9932

## CERTIFICATE OF COMPLIANCE

I hereby certify that the forgoing Defendant's Brief in Support of Motion to Dismiss was prepared in 14-point Times New Roman in compliance with Local Rules 5.1(C) and 7.1(D).

/s/Elizabeth A. Monyak
ELIZABETH A. MONYAK     005745
Senior Assistant Attorney General

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2018, I electronically filed this Brief in Support of Motion to Dismiss using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:  NONE

I hereby certify that I have mailed by United States Postal Service, postage prepaid, the document to the following non-CM/ECF participants:

Ryan Nicholl
950 Hudson Road, SE
Marietta, GA  30060


Done this 20th day of February, 2018.


        /s/Elizabeth A. Monyak
        ELIZABETH A. MONYAK     005745
        Senior Assistant Attorney General