# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 0 9 2018

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

Ryan Nicholl,

*Plaintiff,*

**v.s.**

Samuel S. Olens (official capacity),

*Defendant,*

The Grade (*in rem*)

*Defendant.*

Civil Action No.

1:17-cv-4518-AT

**ORAL ARGUMENT**

**REQUESTED**

# PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## Table of Contents

| | | |
|---|---|---|
| 1 | Defendant's Motion Should Be Denied | 3 |
| I | Summary of Main Arguments | 3 |
| II | Jurisdiction | 4 |
| | (a) 28 U.S. Code § 1331 | 4 |
| | (b) *Ex parte Young* | 5 |
| | (c) Equity Jurisdiction | 8 |
| | (d) *In rem* jurisdiction | 9 |
| III | Standing | 10 |

IV   Pleading Standards . . . . . . . . . . . . . . . . . . . . . . .   10

V   First Amendment Argument I . . . . . . . . . . . . . . . . . .   11

   (a)  Assignment was actually a survey . . . . . . . . . . . . .   11

   (b)  Primer on the Doctrine of Unconstitutional Conditions . . . . . .   11

   (c)  Constitutionality of the Assignment under the First Amendment .   13

   (d)  Application of the Doctrine of Unconstitutional Conditions to the related grade points . . . . . . . . . . . . . . . . . . . .   14

   (e)  Relation to Academic Deference . . . . . . . . . . . . . . .   16

   (f)  Proposed test . . . . . . . . . . . . . . . . . . . . . . .   17

VI   First Amendment Argument II . . . . . . . . . . . . . . . . .   18

   (a)  Arguments incorporated by reference . . . . . . . . . . . .   18

   (b)  *Reed v. Town of Gilbert*, 576 U.S. ___ (2015) . . . . . . . . . .   19

VII   First Amendment Argument III . . . . . . . . . . . . . . . . .   19

   (a)  Arguments incorporated by reference . . . . . . . . . . . .   19

   (b)  Additional Argument . . . . . . . . . . . . . . . . . . . .   19

VIII   13th Amendment Argument . . . . . . . . . . . . . . . . . . .   19

2   Defendant's Arguments are Wrong . . . . . . . . . . . . . . . .   20

IX   In re: Defendant's arguments related to Academic Deference . . . . .   20

   (a)  *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 225 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . .   20

   (b)  *Hazelwood Sch. Dist. v. Kuhlmeir*, 484 U.S. 260, 273 (1988) . . .   21

(c) *Board of Regents of the University System of Georgia v. Houston,*
  282 Ga. App. 412 (2006) . . . . . . . . . . . . . . . . . . . .  21

X   In re: Defendant's arguments on Sovereign Immunity . . . . . . . . .  21

  (a) Summary . . . . . . . . . . . . . . . . . . . . . . . . .  21

  (b) *Kentucky v. Graham,* 473 U.S. 159, 169 (1985) . . . . . . . . . .  22

  (c) *Manders v. Lee,* 338 F.3d 1304, 1308 (11th Cir. 2003) . . . . . .  22

  (d) *Summit Med. Assocs., P.C. v. Pryor,* 180 F.3d 1326, 1337 (11th
  Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . .  22

  (e) *Seminole Tribe of Fla. v. Fla. Dep't of Revenue,* 750 F.3d 1238,
  1249 (11th Cir. 2014) . . . . . . . . . . . . . . . . . . . .  23

XI   42 U.S.C. § 1983 not necessary . . . . . . . . . . . . . . . . . .  24

3   Arguments for preservation only . . . . . . . . . . . . . . . . . .  24

XII   Sovereign Immunity does not exist . . . . . . . . . . . . . . . . .  24

XIII  Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

## Part 1: Defendant's Motion Should Be Denied

## Argument I: Summary of Main Arguments

*Ex Parte Young* recognizes the federal court's equity jurisdiction to hear complaints against state officials to remedy an ongoing violation of federal law. The violation in this case is ongoing because Kennesaw State University continues to maintain an illegal grade of "B". The relief is not retrospective because

"retrospective relief" includes money damages and things such as an injunction for monetary compensation, retrospective relief does not include an injunction to comply with federal law.

The grade may be sued pursuant to the federal court's in rem jurisdiction. Although defendant argues in rem jurisdiction can only be used to dispute ownership of objects, this is only correct as applied to state and not federal law. Federal in rem jurisdiction is more general than the type recognized under Georgia law and can be used to sue the grade for declaratory judgment, similar to *Marcus v. Search Warrant*.

The grade violates the First Amendment because the grade points violate the Doctrine of Unconstitutional Conditions as applied to the First Amendment, because Assignment 11.1 was not germane to the subject-matter of the course.

Academic Deference does not apply because the doctrine is limited in application and does not apply when the assignments or policies themselves are unconstitutional, it only requires deference to academic determinations, not legal ones.

## Argument II: Jurisdiction

## Argument II (a): 28 U.S. Code § 1331

> "The district courts shall have original jurisdiction of all civil actions arising under the **Constitution**, laws, or treaties of the United States." [emphasis added] (28 U.S. Code § 1331)

This Court therefore has jurisdiction over this case.

**Argument II (b):** *Ex parte Young*

Under *Ex parte Young*, the unconstitutional acts of a state official may be challenged if only prospective relief is sought.   Kennesaw State University continues to illegally punish Ryan Nicholl for his protected speech because it continues to maintain a grade of "B" for that course. Ryan Nicholl is not seeking retrospective relief for past conduct, because Ryan Nicholl **did not complete the illegal assignment**, Ryan Nicholl therefore was not harmed by the prior illegal assignment *itself*. Rather, Ryan Nicholl is harmed by the **continuing and ongoing** maintenance of the illegal grade of B in that course.

*Ex Parte Young*, 209 U.S. 123 (1908) establishes that injunctive relief may be had against state officials:

> "The attempt of a State officer to enforce an unconstitutional statute is a proceeding without authority of, and does not affect, the State in its sovereign or governmental capacity, and is an illegal act, and the officer is stripped of his official character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to its officer immunity from responsibility to the supreme authority of the United States." (*Ex Parte Young*, 209 U.S. 123, 124 (1908))

Officers cannot enjoy immunity to Federal law in order to act unconstitutionally. The exception under Ex parte young is not limited to the enforcement of unconstitutional statutes, but applies to all acts of officials:

"It is not necessary that the duty of a State officer to enforce a statute be declared in that statute itself in order to permit his being joined as a party defendant from enforcing it; if, by virtue of his office, he has some connection with the enforcement of the act, it is immaterial whether it arises by common general law or by statute." (*Ex Parte Young*, 209 U.S. 123, 124 (1908))

Thus the rule clearly shows that the *Ex Parte Young* exception applies to unconstitutional acts, even if they arise under a premise other than statute.

"While making a state officer who has no connection with the enforcement of an act alleged to be unconstitutional a party defendant is merely making him a party as a representative of the State, and thereby amounts to making the State a party within the prohibition of the Eleventh Amendment, individuals, who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence an action, either civil or criminal, to enforce an unconstitutional state statute, **may be enjoined from so doing by a Federal court.**" [emphasis added] (*Ex parte Young*, 209 U.S. 123, 125 (1908))

As the 9th Circuit noted in (*Arizona Students' Association, v. Arizona Board of Regents*, 9th Circuit No. 13-16639 (2016)) a claim of First Amendment prohibited retaliation will be covered by the Ex Parte Young exception:

"Although sovereign immunity bars money damages and other retrospective relief against a state or instrumentality of a state, it does not bar claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law." (*Arizona Students' Association, v. Arizona Board of Regents*, 9th Circuit No. 13-16639 (2016))

The violation is ongoing because Kennesaw State University continues to maintain the illegal grade in its gradebook.

> "The district court erred when it failed to apply Young to the ASA's claim of ongoing First Amendment retaliation, and its request for prospective injunctive and declaratory relief. As explained below, the ASA properly alleged a First Amendment retaliation claim, and it identified ABOR's changes to its fee-collection policies as the sources of ongoing violations of federal law within the meaning of Young and its progeny." (_Arizona Students' Ass'n v. Arizona Bd. of Regents_, No. 13-16639 (9th Cir. 2016))

This Court is aware of _William Edward Ezzell v. The Board of Regents_, and I will cite it here:

> "Contrary to the district court's view, the Young doctrine is not limited to cases in which the plaintiff seeks to enjoin a state official from enforcing an unconstitutional state statute. Young applies "where the underlying authorization upon which the named official acts is asserted to be illegal" under federal law, the "violation of federal law by [the] state official is ongoing," and the relief sought will end the violation. [...] The case at hand fits this mold. The appellees' underlying authorization, i.e., the authority to ignore appellants' tenure, when exercised, is alleged to be repugnant to the Constitution; the appellees have exercised and are continuing to exercise that authority to appellants' detriment; and the relief appellants seek will end appellees' conduct." [emphasis added] (_William Edward Ezzell v. The Board of Regents of the University System of Georgia_, 838 F.2d 1569 (11th Cir. 1988))

Clearly, the alleged authority of Kennesaw State University to ignore the First Amendment is alleged to be unconstitutional here, therefore the case is analogous.

**Argument II (c): Equity Jurisdiction**

The most information portion of the Ex parte Young decision rests upon it's recognition of the Court's *equity jurisdiction*:

> "[T]he courts having jurisdiction, whether Federal or State, should at all times be open to them, and, where there is no adequate remedy at law, the proper course to protect their rights is by suit in equity in which all interested parties are made defendants." (*Ex Parte Young*, 209 U.S. 123, 126 (1908))

Though as the defendant points out, grades are not a "justiciable" controversy under state law, state law cannot erase the Plaintiff's federal rights:

> "The present case concerns not only a federally created right, but a federal right for which the sole remedy is in equity. [...] And so we have the reverse of the situation in Guaranty Trust Co. v. York, supra. We do not have the duty of a federal court, sitting as it were as a court of a State, to approximate as closely as may be State law in order to vindicate without discrimination a right derived solely from a State. We have the duty of federal courts, sitting as national courts throughout the country, to apply their own principles in enforcing an equitable right created by Congress." (*Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946))

State law principles do not apply here because all of the grounds of the suit are federal in nature. The only difference is that here I seek resolution of a federal constitutional right in equity rather than one that arises from statute.

**Argument II (d): *In rem* jurisdiction**

"The Grade" is a document or record capable of being sued[1]; as bizarre as that might sound, it is clearly supported by well established Supreme Court precedent. While the court cannot order the grade to change itself via an injunction, the grade may be sued for declaratory judgment pursuant to the court's in rem and equity jurisdiction as illustrated by *Marcus v. Search Warrant*, 367 U.S. 717, and this Court may enter declaratory judgment that the correct grade is "A" instead of "B".

*In rem* jurisdiction is *primarily* used to adjudicate the ownership of property, but it is **not** limited to this function *only*. *In rem* jurisdiction can be used to contest the legality of records held by the government. In *Marcus v. Search Warrant*, 367 U.S. 717, Marcus successfully prevailed in the Supreme Court under *in rem* jurisdiction where the Supreme Court held that the search warrant was illegal. *In rem* jurisdiction is more general than being limited to disputing the ownership of property. If this were not the case, then Marcus would not have won in *Marcus v. Search Warrant*, 367 U.S. 717. Marcus was not trying to establish his ownership of the illegal search warrant, rather he was contesting the legality of the document.

There would be no logic to a conclusion that in rem jurisdiction applies to search warrants but not course grades, both are records capable of being sued. Therefore, this court properly has *in rem* jurisdiction over "The Grade". This Court can adjudicate the legality of the grade even if the state is not named as a

---

[1] Although not capable of suing, for obvious reasons.

party, so long as the university system receives notice of the action

Defendant is correct that under State law, in rem jurisdiction does not allow the state courts to take in rem jurisdiction for purposes other than adjudication of ownership of property, but that does not apply to federal in rem jurisdiction. Federal *in rem* jurisdiction cannot be erased by state law[2].

## Argument III: Standing

Ryan Nicholl has standing for the reasons noted in Fact 13 of the Complaint, p. 5.

## Argument IV: Pleading Standards

> "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [...] (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" [...]). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. [...] Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. [...] But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has

---

[2] See *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946).

not "show[n]"—"that the pleader is entitled to relief."" (*Ashcroft v. Iqbal*, 556 U.S. 662, IV A Paragraph 3 (2009))

The complaint meets this burden, for the reasons explained in other sections.

## Argument V: First Amendment Argument I

## Argument V (a): Assignment was actually a survey

If it looks like a duck, walks like a duck, quacks like a duck, but insists that it's a goose, it's still a duck. Assignment 11.1 is really not an assignment, but rather a survey to which grade points were attached. At the least, it isn't related to "technical writing" at all.

## Argument V (b): Primer on the Doctrine of Unconstitutional Conditions

Prior to understanding the Plaintiff's argument that the grade violates the First Amendment, the Court must be aware of the Doctrine of Unconstitutional Conditions and the principles that apply.   The doctrine of unconstitutional conditions prohibits the government from conditioning the receipt of a benefit upon the relinquishment of a constitutional right. "this Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege.'" (*Graham v. Richardson*, 403 U. S. 365, 374) "For that reason, the Court has fully and finally rejected the wooden distinction between "rights" and "privileges" that once seemed to govern the applicability of procedural due process rights." (*Board of Regents of State*

_Colleges v. Roth_, 408 U.S. 564, 571 (1972)) "[The Supreme] Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a "right" or as a "privilege."" (_Graham v. Department of Pub. Welfare_, 403 U.S. 365 (1971)) While there are certain exceptions, they do not apply here.

Law Commons literature on the subject summaries the case law sufficiently:

> "The doctrine of unconstitutional conditions posits that if the government is prohibited from directly limiting the exercise of constitutional rights in a given situation, the government may not achieve the same result indirectly by offering benefits subject to the condition that the recipients waive their constitutional rights." (Edward J. Fuhr, The Doctrine of Unconstitutional Conditions and the First Amendment, 39 Cas. W . Res. L. Rev. 97 (1989))

The doctrine of unconstitutional conditions began with the premise that "[the state] may not impose conditions which require the relinquishment of constitutional rights.  If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all.  It is inconceivable that guaranties [sic] embedded in the Constitution of the United States may thus be manipulated out of existence." (_Frost & Frost Trucking Co. v. Railroad Comm'n_, 271 U.S. 583, 594 (1926))

> "A state, division of the state, or state official may not retaliate against a person by depriving him of a valuable government benefit that that person previously enjoyed, conditioning receipt of a government benefit on a promise to limit speech, or refusing to grant a benefit on the basis of speech. **Those limitations apply even if the aggrieved**

**party has no independent or affirmative right to that government benefit**" [emphasis added] (*Arizona Students' Ass'n v. Arizona Bd. of Regents*, No. 13-16639, 18 (9th Cir. 2016))

"[E]ven though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. . . . Such interference with constitutional rights is impermissible." (*Perry et al. v. Sindermann*, 408 U.S. 593 (1972))

## Argument V (c): Constitutionality of the Assignment under the First Amendment

Defendant's argument that students do not have a right to refuse assignments is wrong, as applied to adult college students. There are certain kinds of assignments which no government has the authority to compel from students. "The Constitution protects against the compelled disclosure of political associations and beliefs." (*Brown v. Socialist Workers Comm.*, 459 U.S. 87 (1982)) Kennesaw State University is a unit of the Board of Regents of the university system of Georgia. "State action against which the Fourteenth Amendment protects includes action by a state board of education." (*West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 637). "[S]tate colleges and universities are not enclaves immune from the sweep of the First Amendment." (*Healy v. James*, 408 U.S. 169, 180, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972)). Political speech includes speech about governmental institutions and agencies. For example, speech criticizing the US

Federal Reserve or US Department of Agriculture would still be political speech even though a particular politician might not be criticized.  If Kennesaw State University is an "arm of the state", then it is certainly the case that speech about Kennesaw State University is speech about an "arm of the state" and therefore political speech.

But even if it is not political speech, the speech would still be protected. "[T]he First Amendment does not protect speech and assembly only to the extent it can be characterized as political. 'Great secular causes, with smaller ones, are guarded.'" (*Mine Workers v. Illinois Bar Assn.*, 389 U. S. 217, 223 (1967))

Compelled speech is subject to strict scrutiny.  People certainly may not be compelled to disclose their political viewpoints, as the Supreme Court has repeatedly emphasized, there is no reason to think that an implied waiver of fundamental constitutional rights occurs when a student signs up for college courses.  "We begin with the proposition that the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." (*Wooley v. Maynard,* 430 U.S. 705 (1977))

## Argument V (d): Application of the Doctrine of Unconstitutional Conditions to the related grade points

Once it is established that the speech is protected, we must turn to the separate but related question of whether the school may assign a grade of "B" instead of "A"

based upon a condition of the student waiving his or her constitutional right to be free from compelled speech, in particular, the completion of Assignment 11.1.

Thus, even if Ryan Nicholl had no right to a grade of "A", because Ryan Nicholl's grade would be "A" but for the denial of the points related to the illegal assignment, the government's action illegally denies Ryan Nicholl a grade of "A" in retaliation for refusing to engage in political speech which the Supreme Court has emphasized a person cannot be compelled to participate in. The rule prohibiting the government from forcing individuals from engaging in political speech applies even when that political speech is part of a school assignment.

A student cannot be given grade points for the completion of a survey where the survey itself violates the First Amendment. As explained in the section on the Doctrine of Unconstitutional Conditions, the government cannot condition even a privilege upon the forfeiture of a constitutional right, with limited exceptions. "The state may condition the privilege on the waiver of a constitutional right if it has "an overriding interest of 'vital importance' in doing so."" (*Branti v. Finkel*, 445 U.S. 507, 515-516 (1980)) There is not a compelling interest in requiring students to fill out political surveys, in fact, such an interest would be contrary to the First Amendment. While the government might have an interest of "vital importance" to educate students, the survey does not accomplish this task because the subject matter of the survey is "Kennesaw State University" rather than "Technical Writing".

**Argument V (e): Relation to Academic Deference**

Academic Deference is a doctrine that establishes that courts should not second guess the findings of teachers in certain circumstances. It has no application to the present case.

The fundamental holding of the Doctrine of Academic Deference is that instructors should not be second guessed with regard to findings of fact about the correctness of grades in light of the grading policies. The doctrine is not a license to violate the constitution. It does not apply when the grading policy *itself* is unconstitutional.

In *Selman v. Cobb County School District*, 449 F.3d 1320 (11th Cir. 2006), the 11th Circuit found a school's curricula to be unconstitutional because it was an establishment of religion; if the Doctrine of Academic Deference applied when the curricula itself was unconstitutional then Cobb County would have prevailed instead.

In other words, if a teacher provides an assignment where the teacher awarded 4 out of 10 points for "The paper provides strong arguments supporting a pro-gun viewpoint", the doctrine of Academic Deference indicates that the Court should not re-examine the professor's factual finding that the student's paper did not present strong arguments in favor or a pro-gun viewpoint unless it was "arbitrary and capricious", but the Court may still examine whether or not the condition upon which grade points were awarded was itself constitutional. The rule of Academic

Deference is analogous to the relationship between Appellate and District Courts, matters of law are reexamined *de novo* by the Appellate Court, but factual findings are reviewed for clear error. This Court is not asked to review whether the professor correctly awarded 0 points for an assignment that was not submitted in light of the grading policy, rather this Court is asked to determine whether the grading policy itself is unconstitutional (which it is).

Academic Deference is limited to speech "supervised by faculty members **and designed to impart particular knowledge or skills to student participants and audiences.**" [emphasis added] (*Hazelwood Sch. Dist. v. Kuhlmeir*, 484 U.S. 260, 273 (1988)). Assignment 11.1 was actually a survey unrelated to "Technical Writing" and therefore clearly does not meet this requirement.

## Argument V (f): Proposed test

I propose a test for determining whether an assignment is subject to the "vital importance" exception to the Doctrine of Unconstitutional Conditions:

> When the conditions upon which grade points are assigned implicate a constitutional right, in determining for the purposes of the Doctrine of Unconstitutional Conditions whether the conditions upon the conference of grade points serve an interest of vital importance, namely the interest of educating students, the court must examine:
>
> 1. the constitutionality of the actual objectives and teaching the

subject matter, and

2. whether the conditions upon the award of grade points are rationally germane to the subject matter of the course,

3. whether the conditions upon the award of grade points could rationally measure the student's achievement of a constitutional objective, and

4. the degree to which the conditions unnecessarily burden a student's constitutional rights.

This test would be straightforward to apply. This would provide a more general framework to harmonize the various court cases relating to challenged school curricula and assignment.[3]

## Argument VI: First Amendment Argument II

## Argument VI (a): Arguments incorporated by reference

The Court should review the arguments for jurisdiction and arguments related to the Doctrine of Unconstitutional Conditions and the previous First Amendment arguments.

---

[3] I analyze this from a legal, rather than contractual, perspective, as Georgia law doesn't seem to recognize any contractual relationship between students and the school, or at the least believes sovereign immunity bars all disputes over such a contract if it exists.

**Argument VI (b):** *Reed v. Town of Gilbert*, **576 U.S. ___ (2015)**

*Reed v. Gilbert* establishes that subject-matter restrictions are content-based and subject to strict scrutiny, which should be applied to precedents involving "school speech", which should now be subject to stricter scrutiny.

**Argument VII: First Amendment Argument III**

**Argument VII (a): Arguments incorporated by reference**

This argument incorporates by reference Argument IV (c) and Argument IV (e).

**Argument VII (b): Additional Argument**

The Court should treat Assignment 11.1 as a direct regulation rather than a conditional benefit, because Ryan Nicholl was not given advanced notice of the assignments and therefore could not give meaningful consent to Assignment 11.1 when registering for classes.

**Argument VIII: 13th Amendment Argument**

The 13th Amendment prohibits involuntary servitude. The policy of Kennesaw State University is to use optional surveys that do not involve grade points. The graded survey is a feature of this particular class that the professor is using in order to improve her course and therefore receive better reviews and maintain job security. "The words "involuntary servitude" have a larger meaning than slavery,

and the Thirteenth Amendment prohibited all control by coercion of the personal service of one man for the benefit of another." (*Bailey v. Alabama*, 219 U.S. 219 (1911)) The compelled service of Assignment 11.1 is not a "duty to the state" but a "duty to a private party" that is prohibited by the 13th Amendment because Ryan Nicholl was not given a list of assignments in advance and therefore did not consent to the assignment, making it involuntary, and because Assignment 11.1 was for the benefit of the professor, not the public.

**Part 2: Defendant's Arguments are Wrong**

**Argument IX: In re: Defendant's arguments related to Academic Deference**

**Argument IX (a): *Regents of University of Michigan v. Ewing*, 474 U.S. 214, 225 (1985)**

Even Defendant's cited cases support this conclusion:

> "When judges are asked to review the substance of a **genuinely academic** decision, such as this one, they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." [emphasis added, footnote omitted] (*Regents of University of Michigan v. Ewing*, 474 U.S. 214, 225 (1985))

**Argument IX (b):** *Hazelwood Sch. Dist. v. Kuhlmeir*, **484 U.S. 260, 273 (1988)**

Academic speech is speech "supervised by faculty members **and designed to impart particular knowledge or skills to student participants and audiences.**" [emphasis added] (*Hazelwood Sch. Dist. v. Kuhlmeir*, 484 U.S. 260, 273 (1988)).

Therefore, Assignment 11.1 would not be included because it was a disguised survey and not related to technical writing.

**Argument IX (c):** *Board of Regents of the University System of Georgia v. Houston*, **282 Ga. App. 412 (2006)**

*Board of Regents of the University System of Georgia v. Houston*, 282 Ga. App. 412 (2006) is irrelevant for the reasons explained in my section about Equity Jurisdiction, citing *Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946), which establishes that federal equity rights cannot be erased by state law.

**Argument X: In re: Defendant's arguments on Sovereign Immunity**

**Argument X (a): Summary**

Defendant argues several cases establish sovereign immunity. I show in my jurisdiction argument why this Court has jurisdiction over this case. This argument is dedicated only to refuting the defendant's arguments. All the cases cited by the defendant involve claims for money damages in some form or another. This case is different because the Plaintiff does not seek money damages.

**Argument X (b):** *Kentucky v. Graham***, 473 U.S. 159, 169 (1985)**

> "Although respondents fail to acknowledge this point, they freely concede that **money damages** were never sought from the Commonwealth, and could not have been awarded against it; **respondents cannot reach this same end simply by suing state officials in their official capacity.**" [footnotes omitted, emphasis added] (*Kentucky v. Graham*, 473 U.S. 159, 169 (1985))

**Argument X (c):** *Manders v. Lee***, 338 F.3d 1304, 1308 (11th Cir. 2003)**

> "This appeal does not address the individual **liability** of Sheriff Peterson or his deputies for using excessive force.   Instead, this appeal involves only the immunity of Sheriff Peterson in his official capacity." [emphasis added] (*Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003))

> "We need not answer, **and do not answer**, today whether Sheriff Peterson wears a "state hat" for any other functions he performs. We conclude only that he does **as to the limited functions at issue in this case**." [emphasis added] (*Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003))

**Argument X (d):** *Summit Med. Assocs., P.C. v. Pryor***, 180 F.3d 1326, 1337 (11th Cir. 1999)**

Defendant argues:

"In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct." (Case 1:17-cv-04518-AT Doc. 11-1)

But this quotation is taken *out of context* and must not be read literally. Reading this quotation literally and in isolation in order to twist the ruling of the 11th Circuit into something that it is not.

> "Because of the important interests of federalism and state sovereignty implicated by Ex parte Young, however, the doctrine is not without limitations— indeed, two are relevant to this appeal. First, the Ex parte Young doctrine applies only to ongoing and continuous violations of federal law. [...] In other words, a plaintiff may not use the doctrine to adjudicate the legality of past conduct. [...] This requirement protects states by setting "a minimum threshold for abrogating a state's constitutional immunity." [...]"
> (*Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1337 (11th Cir. 1999)) [4]

Relief sought is prospective if the violation is "ongoing and continuous". Kennesaw State University currently maintains an illegal grade of B for that course.

## Argument X (e): *Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1249 (11th Cir. 2014)

> ""Prospective" relief will not overcome the sovereign immunity of a state when that relief is an award of money damages camouflaged as an injunction or a declaratory judgment." (*Seminole Tribe of Fla. v. Fla. Dep't of Revenue*, 750 F.3d 1238, 1249 (11th Cir. 2014))

---

[4] The second exception involves "special sovereignty interests", needless to say, Ryan Nicholl's grade is not a "special sovereignty interest" of the State of Georgia.

**Argument XI: 42 U.S.C. § 1983 not necessary**

Defendant argues:  "Plaintiff's constitutional claims are necessarily brought pursuant to 42 U.S.C. § 1983.", however; Ex parte Young, the Constitution and the Court's equity jurisdiction are a sufficient cause of action without regard to 42 U.S.C. § 1983.

**Part 3: Arguments for preservation only**

**Argument XII: Sovereign Immunity does not exist**

Ryan Nicholl thinks that Justice Gorsuch is likely to agree with the Supreme Court's liberal wing that sovereign immunity is not part of the "original meaning" of the 11th Amendment, and therefore raises this argument for appeal preservation purposes only. Sovereign Immunity does not exist because the plain and ordinary meaning of the 11th Amendment was to remove the diversity jurisdiction of the Federal Courts in cases between a state and citizen of a different state, which was previously conferred upon the federal courts in Article 3, Section 2 of the U.S. Constitution, and the 11th Amendment should not be read to strip the federal courts of diversity jurisdiction as this differs from the obvious way to interpret the 11th Amendment in light of Article 3 Section 2. We can infer this obvious conclusion because the 11th Amendment uses the same phraseology as part of Article 3 Section 2, with the addition of the word "not" and uses the word

"construed" suggesting that the 11th Amendment altered the manner in which the Federal Court's authority was granted rather than being an absolute prohibition. The Supreme Court's decisions in this regard are an aberration from the original interpretation and completely wrong.

## Argument XIII: Conclusion

For the reasons explained above, the case should not be dismissed.

Respectfully submitted,

_____   2018-3-9
RYAN P. NICHOLL              Date
950 HUDSON RD SE
APT 202
MARIETTA GA, 30060
(678) 358-7765
exaeta@protonmail.com
*Plaintiff, pro se*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF GEORGIA

# ATLANTA DIVISION

Ryan Nicholl,

*Plaintiff,*

**v.s.**

Samuel S. Olens (official capacity),

*Defendant,*

The Grade (*in rem*)

*Defendant.*

Civil Action No.

1:17-cv-4518-AT

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAR 0 9 2018

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

## PLAINTIFF'S CERTIFICATION OF SERVICE

I certify and declare pursuant to 28 U.S.C. § 1746 that on 2018-3-9 I have served counsel for Samuel S. Olens, et al. with **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**, and this document, by mailing copies of each aforementioned document with the United States Postal Service to Defendant's registered counsel, addressed as:

ELIZABETH A. MONYAK
Senior Assistant Attorney General
40 Capitol Square SW
Atlanta, GA 30334

1

with proper postage attached, and by emailing a copy of such document to <emonyak@law.ga.gov>.

Respectfully submitted,

_Ryan P. Nicholl_____    2018-3-9
RYAN PATRICK NICHOLL          Date
950 HUDSON RD SE
APT 202
MARIETTA GA, 30060
(678) 358-7765
exaeta@protonmail.com
*Plaintiff*

2