IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RYAN NICHOLL, : <br> : <br>     Plaintiff, : <br> : <br> v. : <br> : <br> SAMUEL S. OLENS, in his official : <br> capacity only, : <br> : <br>     Defendant, : <br> : <br> The Grade (in rem) : <br>     Defendant. : | CA No. 1:17cv4518-AT |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS**

**I.   Plaintiff's Claims Are Barred by the Eleventh Amendment.**

Plaintiff argues that his lawsuit alleges an ongoing violation of federal law for purposes of the *Ex Parte Young* exception to the Eleventh Amendment because his "B" grade resulted from his failure to do the allegedly unlawful assignment, and this grade remains on his transcript. [Doc. 13-2 at 7]. As discussed below, Plaintiff misunderstands the scope of this narrow exception to Eleventh Amendment immunity.

1

The *Ex Parte Young* exception "focus[es] on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which the relief against the state official directly ends the violation of federal law as opposed to cases in which the relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests . . ." *Papasan v. Allain*, 478 U.S. 265, 277-278 (1986).

Applying this legal standard to Plaintiff's lawsuit, it is clear that Plaintiff's claim for declaratory and injunctive relief is not authorized by the *Ex Parte Young* exception. First, the purported federal violation – the allegedly unconstitutional assignment – was an event that occurred in the past and is thus a one-time alleged violation of federal law. Moreover, the relief sought – a declaration that his grade in the course should be an "A" and an injunction requiring a grade change – would not end any ongoing violation (because there is none, given that the class and the assignment are over), and would instead serve only to compensate Plaintiff for an alleged past wrong by elevating his G.P.A.

In *Thomas v. Devries*, 834 F. Supp. 398, 401 (M.D. Ga. 1993), a Georgia federal district court held that a professor's claim for reinstatement following an allegedly wrongful termination did not fall within the scope of the *Ex Parte Young*

2

exception, notwithstanding the plaintiff's claim that he was suffering ongoing harm in the form of his continued unemployment: "The constitutional violation ended when plaintiff's employment was terminated, but the harm caused by the constitutional violation persists. *Unfortunately, the court is without jurisdiction to provide injunctive relief from harms associated with past constitutional violations.*" *Thomas*, 834 F. Supp. at 401(emphasis added).

Similarly, here, Plaintiff's Complaint makes clear that the constitutional violation that he alleges is *the assignment* itself, which Plaintiff considers to be compelled speech in violation of his First Amendment rights [Doc. 1 at 11]; however, that assignment has concluded. Any reduction in his grade point average resulting from his failure to do the assignment is at most tangential harm resulting from the wholly past alleged violation, which is the assignment. *Thomas*, 834 F. Supp. at 401 (noting that plaintiff's confusion on applicability of *Ex Parte Young* exception "derives from plaintiff's erroneous association of the constitutional violation with its tangential harm.")

Federal courts in other jurisdictions have held that expungement of *failing* grades and/or *dismissal* from academic programs can fall within the *Ex Parte Young* exception. While Plaintiff has not cited or discussed any of those cases, their holdings are distinguishable from Plaintiff's case. In *Marino v. City*

*University of N.Y.*, 18 F. Supp. 3d 320 (E.D. N.Y. 2014), for example, a New York federal district court held that *Ex Parte Young* authorized injunctive relief against officials of the City University of New York in a lawsuit seeking expungement of a failing grade based on allegations that the grading was the result of discrimination due to the plaintiff's disability. The first distinction between that situation and Plaintiff's here is that in *Marino*, the unlawful violation *was the grading itself*, and thus the maintenance of that unlawful grade was an ongoing violation. Furthermore, in addition to the fact that the grade was not simply tangential harm, but the actual constitutional violation at issue, the plaintiff in that case alleged that as a result of the failing grade, she had lost her scholarship, was unable to graduate with a Master's degree, and could not become certified as a special education teacher. *Marino*, 18 F. Supp. 3d at 333. The court held that such allegations were sufficient to demonstrate ongoing harm for purposes of seeking injunction relief under the *Ex Parte Young* exception to the Eleventh Amendment. *Id.*

Similarly, in *Shah v. University of Texas Southwestern Medical School*, 129 F. Supp. 3d 480 (N.D. Tex. 2015), a Texas federal court held that a medical student's dismissal from medical school based upon his poor academic performance alleged "ongoing harm" for purposes of *Ex Parte Young* because notice of the dismissal prevented him from acceptance into other medical schools,

4

thus resulting in a new and ongoing alleged constitutional violation. *Shah*, 129 F. Supp. 3d at 496.

The Court in *Shah*, however, specifically distinguished that situation from cases where *Ex Parte Young* did *not* apply because "the plaintiff alleged a continuing *injury*, but the *constitutional violation* was a discrete act that took place only in the past." *Id.* (emphasis in original). The Court cited approvingly to the holdings in *Black Farmers & Agriculturists Ass'n v. Hood*, 2014 U.S. Dist. LEXIS 30583 (S. D. Miss. 2014) and *Cantu Servs. v. Roberie*, 535 Fed. Appx. 342 (5th Cir. 2013), where courts had rejected plaintiffs' attempt to plead an ongoing violation based on the existence of alleged ongoing harm where the harm, while ongoing, had resulted from a past constitutional violation. In *Hood*, an organization representing African-American farmers brought claims against the Attorney General of Mississippi based on his issuance of an allegedly defamatory press release and sought an injunction to require him to correct it. The Mississippi federal district court held the Eleventh Amendment barred the claim because while "plaintiffs allege in their complaint that they continue to suffer harm from a past act by Attorney General Hood," they "do not allege an *ongoing* violation of their constitutional rights." *Hood*, 2014 U.S. Dist. LEXIS 30583 at *15.

Similarly, in *Cantu*, the plaintiff alleged federal violations based on Louisiana officials' failure to renew plaintiff's contract and had sought declaratory and injunctive relief to declare the bidding process unconstitutional, enjoin enforcement of the newly awarded contract, and to require the State to hold a new bidding process. *Cantu*, 535 Fed. Appx. at *5. The Court, however, held that despite the "facial pleading" alleging an ongoing violation, the allegedly unconstitutional bidding process was a one-time past event and thus did not fall within the scope of *Ex Parte Young*.

Plaintiff's case is clearly analogous to *Thomas*, *Hood*, and *Cantu* because it is based on alleged continuing tangential harm stemming from an alleged *past violation*, rather than *an ongoing violation* that causes *ongoing* harm. Moreover, unlike the plaintiffs in the cases involving failing grades and/or academic dismissals, Plaintiff here has not, and cannot, even allege any ongoing harm resulting from his grade of "B" in Technical Writing: Plaintiff makes only speculative, conclusory allegations that a lower GPA "reduces the probability of being hired quickly," "damages [Plaintiff's] reputation"; and "makes it harder to obtain scholarships." [Doc. 1 ¶ 13]. Plaintiff does *not* allege that he has lost a scholarship, a job or a prospective job, or the ability to continue his education, and thus his case is easily distinguishable from those cases in other jurisdictions where

claims for expungements of transcripts were held to fall within the scope of *Ex Parte Young*.

## II. This Court Lacks In Rem Jurisdiction.

As discussed in Defendant's opening brief [Doc. 11-1 at 4-5], this Court clearly lacks in rem jurisdiction over this case because the lawsuit does not seek to "adjudicate rights in [property] that are binding against the world." *Odyssey Marine Exploration v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1171 (11th Cir. 2011). Moreover, in rem jurisdiction exists only "when the court has exclusive custody and control over the property" and thus issues a warrant for the arrest of the res. *Id.* This case does not involve title to property, nor is there any property at issue within the exclusive control of this Court. Plaintiff's contention that "[i]n rem jurisdiction can be used to contest the legality of records held by the government" [Doc. 13-2 at 9] is simply incorrect. Plaintiff reaches this erroneous conclusion by mischaracterizing the holding in the 57-year-old case of *Marcus v. Search Warrant of Property*, 367 U.S. 717 (1961), which, contrary to Plaintiff's assertions [Doc. 13-2 at 9], did *not* involve the exercise of in rem jurisdiction. Federal jurisdiction in that case was predicated on the federal question presented – the constitutionality of the Missouri statutes at issue – and not in rem jurisdiction.

### III. Even If Plaintiff's Claims Were Not Barred By the Eleventh Amendment, Plaintiff's Complaint Fails to State a Claim for Relief.

#### A. Plaintiff's Complaint Fails to State a Claim for a First Amendment Violation.

Plaintiff's First Amendment claim fails to state a claim under well-established precedent that courts do not interfere with curricular decisions that are reasonably related to legitimate pedagogical goals.  Federal courts' "great deference" to "the prerogatives of state and local educational institutions" is rooted in the academic freedom that "thrives not only on the independent and uninhibited exchange of ideas among teachers and students, but also . . . on autonomous decisionmaking by [the academic institution] itself." *Bishop v. Aronov*, 926 F.2d 1066, 1075 (11th Cir. 1991).  "In matters pertaining to the curriculum, educators have been accorded greater control over expression than they may enjoy in other spheres of activity." *Virgil v. School Board of Columbia County, Fla.*, 862 F.2d 1517, 1520 (11th Cir. 1989).

Plaintiff's contention that no judicial deference is warranted here because the assignment was "actually a survey unrelated to Technical Writing" [Doc. 13-2 at 21] plainly lacks merit.  Plaintiff's Complaint alleges that the course evaluation asked Plaintiff to reflect on which assignment he considered to be most and least beneficial to his learning, how he could have improved his performance in the

8

course, how he might have done his assignments differently, and how the course could be improved [Doc. 1 ¶¶ 14-18]. These topics are areas of inquiry that are "reasonably related to legitimate pedagogical concerns" (*Hazelwood Sch. Dist. v. Kuhlmejer*, 484 U.S. 260, 273 (1988)): Clearly, students benefit and grow as learners by reflecting on their learning styles and on how they might improve as students. Moreover, insofar as the questions sought Plaintiff's input on how the course itself could be improved, the inquiry benefits both the student by encouraging critical thinking and the educational program as a whole by potentially improving the learning experience for future classes. This school-sponsored speech is entitled to substantial deference, and "compelling" such speech by assigning the survey as a homework assignment does not violate the First Amendment.

Moreover, a homework assignment does not become unconstitutional simply because the student or a court disagrees with its value. As the Tenth Circuit noted in a case involving a student's challenge to an assignment in an acting class that required her to read a script she found offensive to her religion:

> The school's methodology may not be <u>necessary</u> to the achievement of its goals and it may not even be the most effective means of teaching, but it can still be "reasonably related" to pedagogical concerns. A more stringent standard would effectively give each student veto power over curricular requirements, subjecting the

9

> curricular decisions of teachers to the whims of what a particular student does or does not feel like learning on a given day.

*Axson-Flynn v. Johnson*, 356 F.3d 1277, 1292 (10th Cir, 2004) (underscore in original). *See also Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 350 (5th Cir. 2017) (assignment that students recite the Mexican pledge of allegiance did not violate the First Amendment because "a school may compel some speech [because] [o]therwise a student who refuses to respond in class or do homework would not suffer any consequences" and "[s]tudents . . . generally do not have the right to reject curricular choices as these decisions are left to the sound discretion of instructors."); *Brown v. Li*, 308 F.3d 939, 949 (9th Cir. 2002) ("[T]he first Amendment does not require an educator to change the assignment to suit the student's opinion . . .")

Because the Assignment was reasonably related to legitimate pedagogical goals, Plaintiff's First Amendment Claim must be dismissed.

### B. Plaintiff's Complaint Fails to State a Due Process Claim.

In response to Defendant's arguments that Plaintiff has failed to allege a viable due process claim, Plaintiffs' only response is to state that the Constitution is "a sufficient cause of action without regard to 42 U.S.C. § 1983" [Doc. 13-2 at 24]. This is incorrect. Courts have repeatedly held that constitutional claims are

only cognizable pursuant to 42 U.S.C. § 1983.  *Seacoast Sanitation Ltd. v. Broward County*, 275 F. Supp. 2d 1370, 1375 (S.D. Fla. 2003); *Azul Pacifico v City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992).

Plaintiff also misunderstands applicable law when he states that "state law principles do not apply" because "all of the grounds of the suit are federal in nature." [Doc. 13-2 at 8].  42 U.S.C. § 1983 "creates no substantive rights; it merely creates a remedy for deprivations of federal constitutional and statutory rights."  *City of Hialeah v. Rojas*, 311 F.3d 1096, 1103, n. 7 (11th Cir. 2002).  While Plaintiff's Brief does not clarify whether he is intending to assert a substantive or a procedural due process claim, "substantive due process rights are created only by the Constitution" [*McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) whereas, in contrast, procedural due process claims "stem from an independent source, such as state law."  *Greenbriar Village v. Mt. Brook City*, 345 F.3d 1258, 1262 (11th Cir. 2003).  Thus, state law *is* relevant to a procedural due process claim because if state law confers no property or liberty right entitled to federal constitutional protection, then the claim must be dismissed.[1]

---

[1] Plaintiff's lawsuit fails to state a claim for a violation of substantive due process because it does not involve a right so "fundamental" to the concept of ordered liberty that it must be protected against "governmental actions regardless of the fairness of the procedures used to implement them.'" *McKinney*, 20 F.3d at 1556.

11

Plaintiff cannot assert a viable procedural due process claim here because there is no state law or other independent basis to provide him a property or liberty interest in a grade or a specific GPA that warrants federal protection. Moreover, even if such an interest were assumed to exist, the allegations in the Complaint demonstrate that Plaintiff received constitutionally adequate process.

**1. Lack of a Protected Property or Liberty Interest**

As discussed in the opening Brief [Doc. 11-1 at 11], in *Woodruff v. Georgia State University*, 251 Ga. 232, 232 (1983), the Georgia Supreme Court rejected federal and state constitutional claims based on a college's refusal to accept a student in a degree program due to poor academic performance. While the Court did not specifically analyze the constitutional claims in terms of the elements of due process, its holding that the dispute was not justiciable makes clear that state law conferred no property or liberty right subject to due process protections.

Federal courts in other jurisdictions have rejected constitutional claims based on grading disputes based on the lack of a constitutionally protected property or liberty interest. "No court to date has found that a property interest exists in a particular grade when the grade has no impact on the student's enrollment." *Brown v. Clements*, 2015 U.S. Dist. LEXIS 127806 at *18 (E.D. Va. 2015) (grade of "D"

---

If Plaintiff has any due process claim at all, it would necessarily be a procedural due process claim. *See* Doc. 11-1 at 9-10.

did not implicate property where it had no effect on graduation and enrollment and citing authorities in other jurisdictions); *Smith v. Utah Valley University*, 97 F. Supp. 3d 998, 1004 (S. D. Ind. 2015) ("[C]ourts have been extremely skeptical when reviewing claims by students alleging that their property interest in a certain grade has been denied."); *Al-Asbahi v. W. Va Univ. Bd. of Governors*, 2017 U.S. Dist. LEXIS 12400 at *32-33 (N.D. W.Va. 2017) (discussing distinction between grade disputes and dismissals and stating that plaintiff has no property interest in a particular grade).

Nor has Plaintiff adequately pled an alleged liberty deprivation based on receiving the B grade. While Plaintiff's Complaint alleges that "a lower GPA damages [his] reputation" [Doc. 1 ¶ 13], "allegations of injury to reputation alone do not support a section 1983 claim for violation of due process." *Cypress Insurance v. Clark*, 144 F.3d 1435, 1436 (11th Cir. 1998). Instead, to survive dismissal, Plaintiff must also allege allegations showing "an additional constitutional injury tied to a previously recognized constitutional property or liberty interest"; generalized allegations of future harm are insufficient. *Rehberg v. Palk*, 611 F.3d 828, 852 (11th Cir. 2010). *See also Brown v. Clements*, 2015 U.S. Dist. LEXIS 127806 at *21 (dismissing claim for lack of liberty interest because

allegations did not show that the D grade "altered or extinguished [plaintiff's] 'legal status'" by effects on enrollment or employment).

### 2. Constitutionally Adequate Process

However, even if Plaintiff could show a constitutionally protected property or liberty interest, the allegations in the Complaint make clear that he received constitutionally adequate process through KSU's grade appeals.  [Doc. 1 ¶¶ 20-22].

The Supreme Court has drawn a distinction between academic and disciplinary proceedings in terms of the amount of due process that is required, with less process required for the former.  *Board of Curators of the Univ. of Missouri v. Horowitz*, 435 U.S. 78, 86 (1978).  Even in the context of an administrative *dismissal* decision, procedural due process requires only "an 'informal give-and-take' between the student and the administrative body dismissing him [or her] that would at least give the student 'the opportunity to characterize his [or her] conduct and put in what he [or she] deems the proper context." *Horowitz*, 435 U.S. at 86 (emphasis added).  "Courts have long found that even upon academic dismissal, a student has no right to a hearing." *Brown*, 2015 U.S. Dist. LEXIS 127806 at *22-23.

Clearly, if due process does not require hearings in cases of academic *dismissals*, the same must be true with regard to the far less consequential event of

14

receiving a disappointing grade. KSU's administrative process allowed Plaintiff to state his views on the assignment and its effect on his grade and thus provided constitutionally adequate due process. *Brown*, 2015 U.S. Dist. LEXIS 127806 at *23-34 (correspondence, meetings, and university appeal process provided sufficient due process in grade dispute). Because Plaintiff has failed to allege sufficient facts that could plausibly allege a violation of his procedural due process rights, his due process claims under § 1983 must be dismissed.[2]

## CONCLUSION

For the foregoing reasons, Defendant prays that his Motion to Dismiss be granted and Plaintiff's Complaint be dismissed.

Respectfully submitted,

CHRISTOPHER M. CARR
Attorney General          112505

ANNETTE M. COWART     191199
Deputy Attorney General

RUSSELL D. WILLARD    760280
Senior Assistant Attorney General

---

[2] Plaintiff's Brief makes no attempt to discuss or distinguish any of the case law cited in the Opening Brief that makes clear that "involuntary servitude" for purposes of the Thirteenth Amendment is defined narrowly and would not encompass school-mandated assignments. The claim is clearly frivolous and should be dismissed for the reasons set forth in Defendant's Opening Brief. [Doc. 11-1 at 13-14.

        /s/Elizabeth A. Monyak
        ELIZABETH A. MONYAK    005745
        REBECCA S. MICK         504300
        Senior Assistants Attorney General

        Georgia Department of Law
        40 Capitol Square SW
        Atlanta, GA  30334
        404-656-7063

        Attorneys for Defendant

Please address all
Communication to:
ELIZABETH A. MONYAK
Senior Assistant Attorney General
40 Capitol Square SW
Atlanta, GA  30334
emonyak@law.ga.gov
404-463-3630
404-657-9932

## CERTIFICATE OF COMPLIANCE

I hereby certify that the forgoing Defendant's Brief in Support of Motion to Dismiss was prepared in 14-point Times New Roman in compliance with Local Rules 5.1(C) and 7.1(D).

/s/Elizabeth A. Monyak
ELIZABETH A. MONYAK    005745
Senior Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2018, I electronically filed this Reply Brief in Support of Motion to Dismiss using the CM/ECF system which will automatically send e-mail notification of such filing to the following attorneys of record:  NONE

I hereby certify that I have mailed by United States Postal Service, postage prepaid, the document and also e-mailed an electronic copy in PDF format to the following non-CM/ECF participants:

    Ryan Nicholl
    950 Hudson Road, SE
    Marietta, GA  30060
    exaeta@protonmail.com


Done this 27th day of March, 2018.

                                    /s/Elizabeth A. Monyak
                                    ELIZABETH A. MONYAK     005745
                                    Senior Assistant Attorney General