IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RYAN NICHOLL, PRO SE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SAMUEL S. OLENS, and | : | CIVIL ACTION NO. |
| THE GRADE, | : | 1:17-CV-4518-AT |
| | : | |
| Defendants. | : | |

## ORDER

In this lawsuit, Plaintiff Ryan Nicholl, a student at Kennesaw State University, claims that a final course grade unconstitutionally penalized him for failing to answer "political questions" in a class assignment.   (Compl. at 1.) Plaintiff sued Samuel Olens, the President of Kennesaw State University, and "the Grade," a "B" in a writing course, under the First, Thirteenth, and Fourteenth Amendments of the United States Constitution.  (*Id.* at 10-12.)

This matter is before the Court on Defendant Olens' Motion to Dismiss [Doc. 11].  Defendant Olens moves to dismiss all of Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons set forth below, the Court **GRANTS** Defendant's Motion.

## I.    STANDARD FOR MOTION TO DISMISS

This Court should dismiss a complaint under Rule 12(b)(1) only where it lacks jurisdiction over the subject matter of the dispute.  Fed. R. Civ. P. 12(b)(1).

A motion to dismiss for lack of subject matter jurisdiction may be based on either a facial or factual challenge to the complaint. *See McElmurray v. Consol. Gov't of Augusta–Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007). "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Id.* (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). A plaintiff opposing a facial attack consequently "is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion." *Id.* A factual attack, in contrast, challenges "'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *AFC Enters., Inc. v. Restaurant Group, LLC*, Civil Action File No. 1:10—CV—01772—TWT, 2010 WL 4537812, at *2 (N.D. Ga. Nov. 3, 2010) (quoting *Lawrence*, 919 F.2d at 1529) (internal quotation marks omitted). Defendant's motion to dismiss based on lack of subject matter jurisdiction is a facial attack. Accordingly, the Court will accept as true the allegations in Plaintiff's Complaint in considering Defendant's motion to dismiss under 12(b)(1).

Under Rule 12(b)(6), this Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering whether a complaint states a claim upon which relief can be granted, the Court must accept the allegations in the complaint as true and construe them

in the light most favorable to the plaintiff. *Ambrosia Coal & Constr. Co. v. Pages Morales,* 482 F.3d 1309, 1316 (11th Cir. 2007); *Powell v. United States*, 945 F.2d 374, 375 (11th Cir. 1991). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007). Mere labels and legal conclusions are insufficient to withstand a 12(b)(6) motion to dismiss. *Twombly*, 127 S. Ct. at 1965. Ultimately, the complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

The Court recognizes that Plaintiff is appearing *pro se*. Thus, the Complaint is more leniently construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations and internal quotation marks omitted); *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). However, nothing in that leniency excuses a plaintiff from compliance with threshold requirements of the Federal Rules of Civil Procedure. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1998), *cert. denied*, 493 U.S. 863 (1989). Nor does this leniency require or allow courts "to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

## II.    FACTUAL BACKGROUND[1]

Plaintiff is a student enrolled at Kennesaw State University.  (Compl. § II, ¶ 1.)  Kennesaw State University is a unit of the Board of Regents of the University System of Georgia, which is considered a part of the State government.  (*Id.* ¶¶ 2, 3.)  Plaintiff was assigned a grade of "B" in a writing course.  (*Id.* ¶ 6.)  Plaintiff received a "B" rather than an "A" because he did not complete "Assignment 11.1" in the writing course.  (*Id.* ¶ 7.)  Assignment 11.1 was designed to solicit feedback about which assignments were most effective to promote student learning in order to improve the course.  (*Id.* ¶ 14.)  It included questions such as "Of the assignments given this semester, which do you believe to be the most beneficial to your learning?  Explain," and other similar questions  (*Id.* ¶¶ 14-18.)  Plaintiff decided not to complete Assignment 11.1 "because it required [him] to disclose political viewpoints."  (*Id.* ¶ 9.)

Plaintiff appealed the course grade of "B" six times: to the Department Chair, College Dean, Dean of Students, Provost, President, and the Board of Regents.  (*Id.* ¶ 20.)  No appeal has changed the Plaintiff's grade to "A."  (*Id.*)  Defendant Olens, the President and CEO of Kennesaw State University, issued the final decision of Kennesaw State University in September 2017, declining to change the grade from "B" to "A."  (*Id.* ¶¶ 10, 21.)  Plaintiff submitted an application for discretionary review to the Board of Regents but had not received

---

[1] The factual background the Court describes below is based on the allegations in Plaintiff's Complaint, which the Court construes in Plaintiff's favor consistent with the standard discussed above.

a substantive response at the time he filed his Complaint in this Court. (*Id.* ¶ 22.)
According to his Complaint, Plaintiff considers further appeal efforts to be futile.
(*Id.* ¶ 23.)

## III.   ANALYSIS

### A. Eleventh Amendment immunity

The Court must first consider Defendant's motion to dismiss for lack of
subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).
Defendant argues that this case is subject to dismissal because the Court lacks
subject matter jurisdiction under the Eleventh Amendment. Defendant asserts
that the *Ex Parte Young* exception to Eleventh Amendment immunity does not
apply here because the exception does not extend to retrospective relief and
Plaintiff is seeking relief for "an alleged *past* violation of constitutional rights."
(Mot. Dismiss at 2-3 (emphasis in original).) Plaintiff argues that he is "not
seeking retrospective relief for past conduct," but rather "is harmed by the
*continuing and ongoing* maintenance of the illegal grade of B in that course," and
therefore the Eleventh Amendment does not bar this suit even though Defendant
is a state official. (Pl.'s Br. at 5 (emphasis in original).)

The Eleventh Amendment provides that "[t]he judicial power of the United
States shall not be construed to extend to any suit in law or equity, commenced or
prosecuted against one of the United States by Citizens of another State, or by
Citizens or subjects of any Foreign State." U.S. Const. Amend. XI. "Because the
Eleventh Amendment represents a constitutional limitation on the federal

judicial power established in Article III, federal courts lack jurisdiction to entertain claims that are barred by the Eleventh Amendment." *McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252, 1256 (2001). Eleventh Amendment immunity "is in the nature of a jurisdictional bar" and operates as an entitlement "to be free from the burdens of litigation." *Bouchard Transp. Co. v. Florida Dep't of Envtl. Prot.*, 91 F.3d 1445, 1448 (11th Cir. 1996) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) and *Edelman v. Jordan*, 415 U.S. 651, 677–78 (1974)).

Under the Eleventh Amendment, a private party cannot sue a state except where the state has consented to be sued, the state has waived its immunity, or Congress has overridden the state's immunity. *Cross v. State of Ala.*, 49 F.3d 1490, 1502 (11th Cir. 1995). "Though by its plain terms the Eleventh Amendment only precludes federal courts from entertaining suits against a state brought by citizens of another state, it has been construed to bar suits against a state brought by that state's own citizens as well." *McClendon*, 261 F.3d at 1256 (2001) (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). States' immunity from suit extends to "arm[s] of the state," including state officials. *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1520 (11th Cir. 1983).

There is a well-established exception to state officials' immunity under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), which applies to cases where a violation of federal law by a state official is ongoing. *Florida Ass'n of Rehabilitative Facilities, Inc. v. State of Florida Dep't of Health and*

*Rehabilitative Servs.*, 225 F.3d 1208, 1219 (11th Cir. 2000).  The *Ex Parte Young* doctrine allows suits against state officials "seeking *prospective* equitable relief to end *continuing* violations of federal law."  *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999) (emphasis in original).  A plaintiff may not "use the doctrine to adjudicate the legality of past conduct."  *Id.* at 1337.

The requested relief in this lawsuit is for (1) Declaratory Judgment "against the Grade" that Plaintiff's grade is "legally 'A' and not 'B'"; (2) an injunction "order[ing] and direct[ing] Samuel S. Olens to correct the Grade to 'A'"; and (3) an award of costs to Plaintiff.  (Compl. at 13.)

Although Plaintiff is seeking declaratory and equitable relief and not damages, he is essentially challenging "the legality of past conduct": the assignment of the grade of "B" in his writing course.  *Summit Med. Assocs.,* 180 F.3d at 1337.    Indeed, Plaintiff's Complaint describes the allegedly unconstitutional conduct in the past tense as a discrete event.  (*See* Compl. at 10 ("The assignment of the Grade of 'B' instead of 'A' to Ryan Nicholl violates the First Amendment to the U.S. Constitution because it was done as a result of Ryan Nicholl exercising his rights under the First Amendment...").)  Plaintiff's brief opposing the motion to dismiss characterizes the allegedly unconstitutional conduct as the "maintenance of the illegal grade of B," but Plaintiff cannot transform the one time assignment of this grade into ongoing conduct merely by pointing out that no one has yet changed his grade.  *Fedorov v. Bd. of Regents for Univ. of Georgia*, 194 F.Supp.2d 1378, 1387 (S.D. Ga. 2002) ("Simply because the

remedy will occur in the future, does not transform it into 'prospective' relief. The term, 'prospective relief,' refers to the ongoing or future threat of *harm,* not relief.").  Here, unlike in the cases cited by Plaintiff, there is no ongoing alleged violation of federal constitutional law.  *Contra Ezzell v. Bd. of Regents of the Univ. Sys. of Georgia*, 838 F.2d 1569, 1571 (11th Cir. 1988) (reversing district court's grant of sovereign immunity because there was an ongoing deprivation of faculty member's property interest in tenure without due process); *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (finding First Amendment retaliation claim not barred in light of alleged ongoing violations of federal law resulting from board's changes to its fee-collection policies aimed to chill students' political speech and deprive student organization of income).

Accordingly, Plaintiff cannot overcome Defendant's Eleventh Amendment immunity and Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) is **GRANTED**.

Even if Plaintiff's claims were construed as properly seeking prospective injunctive relief and therefore not barred by the Eleventh Amendment[2],

---

[2] The Court rejects Plaintiff's assertion that his claims are not barred by the Eleventh Amendment because the Court has in rem jurisdiction over the "Grade."  Plaintiff has failed to establish the application of in rem jurisdiction in the context of this case, and his reliance on *Marcus v. Search Warrants of Property at 104 East Tenth Street, Kansas City, Missouri*, 367 U.S. 717 (1961) is misplaced.  *Marcus* was not an in rem proceeding.  Rather, *Marcus* was a consolidation of appeals from the Missouri state circuit court, and the Supreme Court exercised jurisdiction over the appeal pursuant to 28 U.S.C. § 1257(a), which provides that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is

Plaintiff's Complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim as set forth below.

### B. First Amendment claim

In the alternative, Defendant moves to dismiss Plaintiff's claims for failure to state a claim upon which relief can be granted.   Fed. R. Civ. P. 12(b)(6).   In support of his First Amendment claim, Plaintiff alleges:

> The assignment of Grade "B" instead of "A" to Ryan Nicholl violates the First Amendment to the U.S. Constitution because it was done as a result of Ryan Nicholl exercising his rights under the First Amendment not to disclose his political viewpoints.   Political speech is speech about government.   Because Kennesaw State University is a public university, and a unit of the Board of Regents of the University System of Georgia, speech about Kennesaw State University is therefore political speech.   Because the Assignment mandated speech about Kennesaw State University, the assignment mandated political speech.   Therefore the Assignment was a form of compelled political speech in violation of the First Amendment.

(Compl. § III, ¶ 2.)   Defendant asserts Plaintiff's Complaint fails to state a claim for a First Amendment violation because students do not have a First Amendment right to refuse curricular assignments.   Defendant's argument is based on the broad authority afforded to educators to exercise control over school-sponsored speech, i.e., speech that is "supervised by faculty members and designed to impart particular knowledge or skills to student participants and audiences."   (Mot. Dismiss at 7 (quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271 (1988)).)

---

drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States."   367 U.S. at 721.

Plaintiff argues in response that "there are certain kinds of assignments which no government has the authority to compel from students," including assignments that compel the disclosure of political beliefs. (Pl.'s Br. at 13 (citing *Brown v. Socialist Workers '74 Campaign Comm.*, 459 U.S. 87 (1982)).) Plaintiff asserts that the constitutionality of the assignment is not entitled to judicial deference because Plaintiff characterizes Assignment 11.1 as a "survey" that was unrelated to his technical writing course. (*Id.* at 11, 17.) He argues that the assignment sought to compel political speech because "speech about Kennesaw State University is speech about an 'arm of the state' and therefore political speech." (*Id.* at 14.) Plaintiff acknowledges that he had no right to a grade of "A," but argues that he would have received an "A" "but for the denial of the points related to the illegal assignment," and that "the government's action illegally denied [him] a grade of 'A' in retaliation for refusing to engage in political speech." (*Id.* at 15.) According to Plaintiff, Defendant's motion to dismiss should be denied because strict scrutiny applies to this case and there is no compelling interest in requiring students to fill out political surveys and that the survey does not serve to educate students "because the subject matter of the survey is 'Kennesaw State University' rather than 'Technical Writing.'" (*Id.*)

A university classroom is not an open public forum during instructional time, and as a result school officials may impose reasonable restrictions on the speech of students, teachers, and other members of the school community. *Keeton v. Anderson-Wiley*, 664 F.3d 865, 872 (11th Cir. 2011) (citing *Pleasant*

*Grove City v. Summum*, 555 U.S. 460, 470 (2009)); *Bishop v. Aranov*, 926 F.2d 1066, 1071 (11th Cir. 1991) (citing *Hazelwood Sch. Dist.*, 484 U.S. at 267).  It is well established that educators have broad discretion in the areas of curriculum and grading.  *Hazelwood Sch. Dist.*, 484 U.S. at 271 (explaining that "[e]ducators are entitled to exercise greater control over" activities that "may fairly be characterized as part of the school curriculum" than other forms of student expression); *Virgil v. Sch. Bd. of Columbia Cty., Fla.*, 862 F.2d 1517, 1520 (11th Cir. 1989) ("In matters pertaining to the curriculum, educators have been accorded greater control over expression than they may enjoy in other spheres of activity."); *Keeton*, 664 F.3d at 879 (11th Cir. 2011) (affirming schools' freedom to give failing grades to students "who refuse[] to answer a test question for religious reasons, or who refuse[] to write a paper defending a position with which the student disagrees").  The Supreme Court and the Eleventh Circuit have repeatedly stated that courts should defer to educators' professional judgment in such areas.  *See, e.g.*, *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985) (When reviewing "the substance of a genuinely academic decision," judges "may not override [the faculty's professional judgment] unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment."); *Bishop v. Aronov*, 926 F.2d at 1075 (("Federal judges should not be ersatz deans or educators.").

Plaintiff appears to assert a First Amendment retaliation claim and compelled speech claim.  The claims are unavailing on the facts alleged.  To establish a First Amendment retaliation claim, the plaintiff must show "first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).  Plaintiff has failed to establish an essential element of his First Amendment claim – that his speech (or refusal to speak) was constitutionally protected.  Plaintiff's Complaint allegations do not establish the restriction or compulsion of protected speech.

Plaintiff alleges that Assignment 11.1 required students to disclose political viewpoints because it mandates speech about the University.  (Compl. § II, ¶ 9, § III, ¶ 2.)  The Court is not bound to accept this allegation – a legal conclusion – as true.  *Iqbal*, 556 U.S. 678-79 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (noting that in considering a motion to dismiss, a court should "eliminate any allegations in the complaint that are merely legal conclusions").  Contrary to Plaintiff's argument in opposition to the motion to dismiss that the assignment served no legitimate educational purpose, Plaintiff's actual Complaint allegations establish the opposite.

Plaintiff's Complaint alleges the following regarding Assignment 11.1:

14. Assignment 11.1 Question 1 which reads:

> "Of the assignments given this semester, which do you believe to
> be the most beneficial to your learning? Explain."

is designed with intent to and has the effect of soliciting feedback about
which assignments were most effective to promote student learning in order
to improve the course, not for the purpose of evaluating Nicholl's academic
achievement nor teaching Nicholl how to write technically.

15. Assignment 11.1 Question 2 which reads:

> "Which assignment do you believe you should have spent more
> time and focus on prior to submission?  What would you have
> done differently?"

is designed with intent to and has the effect of soliciting feedback that would
be used for the purpose of determining how students could be better advised
about how they could prepare for assignments in order to improve the
course, not for the purpose of evaluating Nicholl's academic achievement
nor teaching Nicholl how to write technically.

16. Assignment 11.1 Question 3 which reads:

> "Which assignment did you find to be the least beneficial?
> Explain."

is designed with intent to and has the effect of soliciting feedback that
would be used for the purpose of determining which assignments should
be revised or removed in order to improve the course, not for the purpose

of evaluating Nicholl's academic achievement nor teaching Nicholl how to write technically.

17. Assignment 11.1 Question 4 which reads:

> "After looking through the table of contents of your Markel text, identify a topic you find interesting that was not covered this semester. (Note: Not all topics listed by Markel are topics of focus for the TCOM courses at KSU)."

is designed with intent to and has the effect of soliciting feedback that would be used for determining what content could be included to increase student interest in order to improve the course, not for the purpose of evaluating Nicholl's academic achievement nor teaching Nicholl how to write technically.

18. Assignment 11.1 Question 5 which reads:

> "Do you have any suggestion for the setup or execution of this course? If so, what is it?"

is designed with intent to and has the effect of soliciting any other feedback that could be used for the purpose of improving the course in order to improve the course, not for the purpose of evaluating Nicholl's academic achievement nor teaching Nicholl how to write technically.

(Compl. § II, ¶¶ 14-18.)  As Plaintiff acknowledges in his Complaint, Assignment 11.1 was designed with the intent to and had the effect of soliciting feedback to improve student learning and to improve the particular course for which the student had completed – here Plaintiff's technical writing course.

Under its authority over curricular matters, a public university can impose course requirements without violating a student's right to be free from compelled speech. *Keeton*, 664 F.3d at 878-79; *see also West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 631-32 (1943) (discussing *Hamilton v. Regents*, 293 U.S. 245 (1934) and noting that "where a State, without compelling attendance, extends college facilities to pupils who voluntarily enroll, it may prescribe military training as part of the course without offense to the Constitution. It was held that those who take advantage of its opportunities may not on ground of conscience refuse compliance with such conditions"). In student speech cases, "First Amendment rights must be analyzed in light of the special characteristics of the school environment." *Keeton*, 664 F.3d at 871 (quoting *Widmar v. Vincent*, 454 U.S. 263, 268 n. 5 (1981) (internal quotation marks omitted)); *see also Heenan v. Rhodes*, 757 F.Supp.2d 1229 (N.D. Ala. 2010) (rejecting student's claim that she engaged in protected speech by contesting her poor grades and disciplinary points because "[t]he discretion granted teachers to award grades and dole out discipline related to academic achievement should not be stymied by the judiciary, unless there is evidence of improper motive in the suppression of speech").

In *Keeton*, a student enrolled in Augusta State University's counselor education program asserted retaliation and compelled speech claims against the school for requiring her to complete a remediation plan. *Id.* The student argued that "by imposing the remediation plan on her in response to her statements

regarding her personal religious beliefs and her intent to impose those beliefs on clients," University officials retaliated against her for exercising her First Amendment free speech rights and sought to unconstitutionally compel her to express beliefs with which she disagreed. *Id.* With respect to the retaliation claim, the Eleventh Circuit found that the University imposed the remediation plan because of the student's unwillingness to abide by the University's curriculum,[3] not because she expressed her personal religious views regarding homosexuality through her writings and class discussions. *Id.* at 878. The Court rejected the notion that the student's conduct was "cloak[ed] in First Amendment protection." *Id.* The Eleventh Circuit further ruled that the student did not have a constitutional right to refuse to complete the remediation plan and rejected her compelled speech claim because the student voluntarily enrolled in the school's graduate counseling program and the university was not forcing her "to profess a belief contrary to her own personal beliefs" by requiring the student to complete the remediation plan and comply with the university's rules and regulations. *Id.* at 879.

Assignment 11.1 "may fairly be characterized as part of the school curriculum" because it was assigned by the professor in Plaintiff's writing course and it asked students to evaluate the course and reflect on their learning. *Hazelwood Sch. Dist.*, 484 U.S. at 271. Assignment 11.1 asked Plaintiff open-

---

[3] Specifically, Keeton refused to comply with the American Counseling Association's (ACA) Code of Ethics, which ASU was required to adopt and teach in order to offer a counseling program accredited by the Council for Accreditation of Counseling and Related Educational Programs (CACREP).

ended questions about his experience in the writing course and did not force him

to profess any particular beliefs subject to First Amendment protection. *Keeton*,

664 F.3d at 879.  As the Eleventh Circuit explained in *Keeton*,

> the Supreme Court has hardly indicated an intention to limit a
> school's power to require its students to demonstrate whether they
> grasp a particular lesson. A school must, for instance, be free to give
> a failing grade to a student who refuses to answer a test question for
> religious reasons, or who refuses to write a paper defending a
> position with which the student disagrees. *See Brown v. Li*, 308 F.3d
> 939, 953 (9th Cir.2002) (Garber, J.) ("[C]onsistent with the First
> Amendment[,] a teacher may require a student to write a paper from
> a particular viewpoint, even if it is a viewpoint with which the
> student disagrees, so long as the requirement serves a legitimate
> pedagogical purpose."). . . . These actions, like ASU's officials'
> imposition of the remediation plan, are the types of academic
> decisions that are subject to significant deference, not exacting
> constitutional scrutiny.

*Id.* at 879.   Therefore, Assignment 11.1 falls squarely within an area where

educators are entitled to exercise "greater control over expression than they may

enjoy in other spheres of activity." *Virgil,* 862 F.2d at 1520; *Curry ex rel Curry v.*

*Hensiner*, 513 F.3d 570, 579 (6th Cir. 2008) ("*Hazelwood* does not require [the

courts] to balance the gravity of the school's educational purpose against [the

student's] First Amendment right to free speech, only that the educational

purpose behind the speech suppression be valid.").  For this reason, Plaintiff has

failed to state a plausible claim that he had a First Amendment right to refuse to

complete the assignment without being penalized in the form of a lower grade.

*Id.*; *Hazelwood School Dist.*, 484 U.S. at 273 ("[It] is only when the decision to

censor ... has no valid educational purpose that the First Amendment is so

'directly and sharply implicate[d],' as to require judicial intervention to protect students' constitutional rights.")   Accordingly, Defendant's Motion to Dismiss Plaintiff's First Amendment claim under Fed. R. Civ. P. 12(b)(6) is **GRANTED**.

### C.    Fourteenth Amendment Due Process claim

Plaintiff appears to allege that Defendant violated Plaintiff's liberty interest in protecting his reputation, and that he is harmed by not receiving an "A" because receiving the Grade of "B" contributes to a lower GPA which reduces the probability of being hired quickly, damages his reputation, and makes it harder to obtain scholarships.  (Compl. § II, ¶ 13; § III, ¶ 3.)  Plaintiff further alleges the University's grade appeal procedures are ineffective to address the merits of his claim, failed to result in the correction of his grade to "A," and appear "inherently non-neutral and biased in favor of the professor" (*id.* § II, ¶¶ 20-24).   The Court therefore construes Plaintiff's Complaint to allege both substantive and procedural due process claims.

Defendant moves to dismiss Plaintiff's due process claim on the ground that Plaintiff has not identified a constitutionally-protected liberty or property interest.  Defendant argues that property interests are created by state law, and Georgia law does not recognize a constitutionally protected right to a certain grade or academic outcome.  (Mot. Dismiss at 11 (citing *Woodruff v. Georgia State Univ.*, 304 S.E.2d 697, 699 (Ga. 1983)).)  Plaintiff does not make any due process arguments in his brief opposing Defendant's motion to dismiss.

The Due Process clause of the Fourteenth Amendment "provides that certain substantive rights – life, liberty, and property – cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). The Fourteenth Amendment provides two different kinds of constitutional protection: procedural due process and substantive due process. *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "The categories of substance and procedure are distinct." *Loudermill*, 470 U.S. at 541. The substantive component of due process protects those "fundamental" rights created by the Constitution that are "implicit in the concept of ordered liberty." *McKinney*, 20 F.2d at 1556 (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)); *Greenbriar Vill., L.L.C. v. Mountain Brook*, 345 F.3d 1258, 1263 (11th Cir. 2003) ("Fundamental rights are those rights created by the Constitution.").

Property interests are not created by the Constitution, but rather are defined by "existing rules or understandings that stem from an independent source such as state law." *Loudermill*, 470 U.S. at 538; *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Greenbriar Vill., L.L.C.*, 345 F.3d at 1263. Substantive rights that are created only by state law are not subject to substantive due process protection under the Due Process Clause. *McKinney*, 20 F.3d at 1556 "As a result, these state law based rights constitutionally may be rescinded so long as the elements of procedural – not substantive – due process are observed." *Id.; Greenbriar Vill., L.L.C.*, 345 F.3d at 1263.

To allege a denial of due process requires three elements: (1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003); *see also Greenbriar Vill., L.L.C.*, 345 F.3d at 1264. To determine whether due process requirements apply in the first place, a court must consider the nature of the interest at stake. *Bd. of Regents v. Roth*, 408 U.S. 564, 570 (1972). The Supreme Court has recognized that procedural due process – notice and an opportunity to be heard – applies where the government attaches "a badge of infamy" to the citizen, meaning "(w)here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." *Id.* (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)).

But not every interest is constitutionally protected. *Bd. of Regents*, 408 U.S. at 572. Procedural due process is triggered "where an individual will be condemned to suffer grievous loss." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (quoting *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168 (1951) (Frankfurter, J., concurring)), *Jones v. Comm'r, Georgia Dep't of Corr.*, 812 F.3d 923, 937 (11th Cir. 2016) (Wilson, J., dissenting).

Neither the Supreme Court, the Eleventh Circuit Court of Appeals, nor the Georgia Supreme Court has held that university academic grading decisions implicate property or liberty interests, entitling a student to constitutional due-process protections. This court is unaware of any binding or persuasive federal or

Georgia court decision recognizing a university student as having a constitutionally protected property or liberty interest to a certain grade.  Most case law involving due process in the educational setting concerns student dismissals or suspensions from academic institutions. In those circumstances, the Supreme Court has held students are afforded limited due-process protections, in the form of "an 'informal give-and-take' between the student and the administrative body dismissing him that would, at least, give the student 'the opportunity to characterize his conduct and put it in what he deems the proper context.'" *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 86 (1978) (quoting *Goss v. Lopez*, 419 U.S. 565, 584 (1975)); *Goss v. Lopez*, 419 U.S. at 576 n. 8 (noting that since 1961, "the lower federal courts have uniformly held the Due Process Clause applicable to decisions made by tax-supported educational institutions to remove a student from the institution long enough for the removal to be classified as an expulsion."); *Barnes v. Zaccari*, 669 F.3d 1295 (11th Cir. 2012); *Dixon v. Ala. State Bd. of Educ.*, 294 F.2d 150, 157 (5th Cir. 1961) ("[D]ue process requires notice and some opportunity for hearing before a student at a tax-supported college is expelled for misconduct."). The Supreme Court also recognized there is a "significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct[,] ... [which] calls for far less stringent procedural requirements in the case of an academic dismissal." *Horowitz*, 435 U.S. at 86.

To the extent courts have addressed the issue at hand here, they have held that absent a denial of access to public education, no property or liberty interest is implicated by a university's exercise of its academic discretion. *Smith v. Davis*, 507 F. App'x. 359, 362 (5th Cir. 2013) (rejecting university student's claims that "he had a property interest in: the summer 2009 English course; the grade he received in it; and obtaining a four-year education [and] liberty interest in: his good name; his reputation; and continuing to play football for the University of New Mexico," and finding that he had not alleged a denial of access to an education or "placed in legitimate doubt the academic nature of University's actions"); *Hodge v. Coll. of S. Maryland*, 121 F. Supp. 3d 486, 500–01 (D. Md. 2015) ("Plaintiffs have not established that Mr. Hodge had a protected property or liberty interest in receiving a "C" in his math course."); *Marino v. City Univ. of New York*, 18 F. Supp. 3d 320, 337–38 (E.D.N.Y. 2014) ("Plaintiff has failed to allege that the process afforded to her by the CUNY officials was constitutionally inadequate. At its core, Plaintiff's appeal was an academic dispute: a student asking the university bureaucracy to change her grade."); *Woodruff v. Georgia State University*, 304 S.E.2d 697, 699 (Ga. 1983) (declining to address student's state law and constitutional challenges to university teacher's academic assessment of the student's work, holding that such suits do not present a justiciable controversy because otherwise educators would be exposed to "the cost and agony of litigation initiated by pupils and their parents who would rely upon the legal process rather than the learning process"); *see also Nevares v. San*

*Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26 (5th Cir. 1997) (no property or liberty interest implicated in transfer from one school program to another with stricter discipline because student never denied access to public education, even temporarily, such as through suspension or expulsion); *Jeffrey v. Bd. of Trustees of Bells ISD*, 261 F.Supp.2d 719, 726 (E.D.Tex. 2003) (no property interest in right to take high-school Spanish course at different time; "it is only when a student is excluded from the entire educational system that due process must be afforded"), *aff'd*, 96 F.App'x. 248 (5th Cir. 2004) (per curium).

Accordingly, the Court finds that Plaintiff has failed to allege a constitutionally protected liberty or property interest and therefore has failed to state plausible substantive or procedural due process claims.  Even if the Court were to find that Plaintiff had alleged "enough of a property interest at stake to be deemed protectable," *Greenbriar Vill., L.L.C.*, 345 F.3d at 1264, for purposes of asserting a claim for procedural due process, such a claim would nonetheless fail.

Plaintiff has failed to allege that the process afforded to him by Kennesaw State University was constitutionally inadequate. This is in essence an academic dispute; Plaintiff asked the University to change his grade. As the Supreme Court has held, there is no mandatory set of formal procedures required for challenging academic decisions. *Horowitz*, 435 U.S. at 89-90 (finding that academic challenges require less formalized procedures than disciplinary determinations). "[W]hile students facing academic disciplinary proceedings must be granted a 'right to respond' to the relevant charges, the procedural rights of such petitioners

'are not co-extensive with the rights of litigants in a civil trial or with those of defendants in a criminal trial.'" *Heenan v. Rhodes*, 757 F.Supp.2d 1229 (N.D. Ala. 2010) (quoting *Nash v. Auburn*, 812 F.2d 655, 664 (11th Cir. 1987). "[C]lassrooms are not courtrooms, and the law does not treat them as such." *Id.* (citing *Horowitz*, 435 U.S. at 88). The deference given to academic institutions is amplified at the collegiate and graduate levels as the "instruction becomes both more individualized and more specialized." *Horowitz*, 435 U.S. at 90 ("We decline to further enlarge the judicial presence in the academic community and thereby risk deterioration of many beneficial aspects of the faculty-student relationship.") Even if the Court were to assume that the appeal procedures offered by Kennesaw State University to Plaintiff were inadequate, Plaintiff fails to state a procedural due process claim because he did not avail himself of an adequate state procedure to remedy any alleged procedural deprivations.

A violation of procedural due process occurs where the state fails to provide due process in the deprivation of a protected property or liberty interest. *McKinney*, 20 F.3d at 1557. It is not the deprivation of a protected interest that causes a violation, but rather, "[i]t is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim." *Id.* Accordingly, only when the state refuses to provide a process sufficient to remedy the procedural deprivation does an actionable constitutional violation arise. *Id.* A plaintiff cannot rely on the failure of the state to provide him due process where

adequate state remedies are available.  As the Eleventh Circuit has explained, if the state courts generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered, there is no federal due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so.  *Horton v. Bd. of County Comm'rs of Flagler County*, 202 F.3d 1297, 1300 (11th Cir. 2000). Thus, if Georgia law provides an adequate means to remedy the alleged procedural deprivation, Plaintiff's procedural due process claim fails.  In applying Georgia law, the Eleventh Circuit has held that the writ of mandamus can be an adequate state remedy to ensure a party was not deprived of his due process rights. *See Cotton v. Jackson*, 216 F.3d 1328, 1332 (11th Cir. 2000); *A.A.A. Always Open Bail Bonds, Inc. v. DeKalb County, Ga.*, 129 F. App'x. 522, 525 (11th Cir. 2005).

Because the writ of mandamus represents an adequate and available state remedy through which Plaintiff's alleged procedural deprivations could have been corrected, Plaintiff has failed to allege a procedural due process violation.  *Coates v. Natale*, 409 F.App'x. 238, 240 (11th Cir. 2010) (affirming dismissal of procedural due process claim of university student challenging her dismissal without an opportunity for a hearing because of her failure to pursue writ of mandamus in state court prior to filing suit in federal court).

Accordingly, Defendant's Motion to Dismiss Plaintiff's Fourteenth Amendment Due Process claim under Fed. R. Civ. P. 12(b)(6) is **GRANTED**.

### D.     Thirteenth Amendment claim

Defendant moves to dismiss Plaintiff's Thirteenth Amendment claim under Fed. R. Civ. P. 12(b)(6).  Plaintiff alleges that his "Grade" violates the Constitutional prohibition on involuntary servitude because the Assignment was created as a coerced survey rather than an academic evaluation of the student. (Compl. § III, ¶ 5.)  Plaintiff further alleges that he did not consent to the Assignment which was not posted in advance of his registration for the course. (Id. § II, ¶ 11.)  Defendant argues that courts generally interpret the term "involuntary servitude" narrowly, and Plaintiff's claim does not meet the definition of "involuntary servitude."  (Mot. Dismiss at 13-14 (citing *Leveto v. Lapina*, No. 98–143 ERIE, 2000 U.S. Dist. LEXIS 1972, at *53 (W.D. Pa. Feb. 5, 2000) ("'Involuntary servitude' has been defined as an action by a wrongdoer causing the victim to have, or to believe he has, no way to avoid continued service or confinement.")).)  Plaintiff cites *Bailey v. Alabama*, 2019 U.S. 219 (1911), for the proposition that "the Thirteenth Amendment prohibited all control by coercion of the personal service of one man for the benefit of another."  (Pl.'s Br. at 20.)  He argues that Assignment 11.1 was involuntary because Plaintiff was not given a list of assignments in advance and therefore did not consent to the assignment.  (*Id.*)  Plaintiff further argues that Assignment 11.1 was "for the benefit of the professor."  (*Id.*)

The Thirteenth Amendment has been interpreted to prohibit the compulsion of services through either physical or legal coercion.  *U.S. v.*

*Kozminski*, 487 U.S. 931, 943 (1988); *U.S. v. Peterson*, 627 F.Supp.2d 1359, 1372 (M.D. Ga. 2008).  "[I]n every case in which [the Supreme] Court has found a condition of involuntary servitude, the victim had no available choice but to work or be subject to legal sanction." *Kozminski*, 487 U.S. at 943 (1988).  This Court is unaware of any case that finds a Thirteenth Amendment violation arising from a required school assignment.

Being required to complete a routine course evaluation falls far short of "involuntary servitude" within the meaning of the Thirteenth Amendment.  It cannot be said that Plaintiff had no choice but to complete Assignment 11.1 "or be subject to legal sanction." *Id.*  The penalty for Plaintiff's refusal to complete Assignment 11.1 was the lowering of Plaintiff's grade from an "A" to a "B" in the writing course – not a "legal sanction." *See id.* (providing examples of cases where labor was compelled by a legal sanction).  Accordingly, Defendant's motion to dismiss Plaintiff's Thirteenth Amendment claim under Fed. R. Civ. P. 12(b)(6) is **GRANTED**.

## IV.   CONCLUSION

The Court appreciates that Plaintiff has brought his Complaint because he embraces the values of the United States Constitution.  That said, Plaintiff misperceives the scope and nature of these important constitutional protections.  His grade of B in his writing class, while it might be a disappointment, simply does not give rise to a constitutional claim here.  For the foregoing reasons

discussed in this Order, the Court **GRANTS** Defendant's Motion to Dismiss [Doc. 11]. [4]

    **IT IS SO ORDERED** this 8th day of May, 2018.


                               **Amy Totenberg**
                               **United States District Judge**

---

[4] The Court perceives no re-pleading here that could establish a viable legal claim.